IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01811-STV

WILSON WILFRED LUARGAS GARCIA,

    Plaintiff,

v.

MERRICK GARLAND, Attorney General,
U.S. FEDERAL BUREAU OF PRISONS,
A. CIOLLI, ADX Warden, and
JOHN DOES 1 THROUGH 5,

    Defendants.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on Defendants' Motion to Dismiss (the "Motion"). [#27] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##25, 26] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in ruling on the Motion. For the following reasons, the Motion is **GRANTED**.

I.    **BACKGROUND**[1]

    Plaintiff is currently incarcerated at the United States Penitentiary, Administrative Maximum Facility ("ADX") in Florence, Colorado. [#13 at 2] Plaintiff is in custody as a

---

[1] The facts are largely drawn from the allegations in Plaintiff's Amended Complaint (the "Complaint") [#13], which the Court accepts as true at this stage of the proceedings. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662

1

result of a life sentence imposed in *United States v. Luargas-Garcia*, No. 17-cv-00013 (E.D. Tex. Oct. 19, 2021).  [#13 at ¶ 5; *see also* #27 at 2]  Plaintiff has been subject to Special Administrative Measures ("SAMs") since early 2022.[2]  [#13 at ¶ 6; *see also* #27-1]

According to the most recent SAM Memorandum, Plaintiff "operated a violent Guatemala-based narcotrafficking organization and, in exercising his leadership over the organization, is believed to be responsible for the murders of at least 30 individuals." [#27-1 at 1]  The SAM Memorandum further asserts that "while in the custody of the United States government, but prior to the imposition of SAM . . . [Plaintiff] continued to communicate with co-conspirators and expressed his intent to kill an Assistant United States Attorney . . . and a cooperating witness."  [*Id.*]  The SAM Memorandum continues that "during the past year [Plaintiff] attempt[ed] to communicate with family members and other close associates" and that "those individuals are believed to be able to carry out or facilitate [Plaintiff's] violent and criminal directives."  [*Id.* at 3]  The SAM Memorandum

---

F.3d 1152, 1162 (10th Cir. 2011)).  The Court also considers the Memorandum concerning the Special Administrative Measures imposed on Plaintiff as these Special Administrative Measures are referred to in Plaintiff's Complaint and are central to his claims.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding a court "must consider the complaint in its entirety . . . [and] documents incorporated into the complaint by reference").

[2] Pursuant to federal regulation, the Attorney General of the United States may direct the Bureau of Prisons to "implement special administrative measures ["SAMs"] that are reasonably necessary to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3(a). These SAMs may include limiting certain privileges, "including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism." *Id.* With approval, each SAM may be imposed for up to one year, but they may be extended in one-year increments. 28 C.F.R. § 501.3(c). The inmate must be provided with written notification of the restrictions imposed and the basis for these restrictions. 28 C.F.R § 501.3(b).

2

thus recommended restricting Plaintiff from contacting specifically identified family members and close associates of Plaintiff "believed to be co-conspirators capable of executing [Plaintiff's] narcotics and violence-related orders." [*Id.*]

Plaintiff has requested that the restrictions be removed, but his requests have been denied. [#13 at ¶ 9] Plaintiff alleges that he attempted to contact his wife, Martina Villeda, but Defendants informed Plaintiff that they do not recognize Ms. Villeda as his wife. [*Id.* at ¶¶ 11-12] Plaintiff further alleges that he attempted to send a letter to his son, but was informed that any communication with his son needed to be facilitated through an approved adult, and the adult provided by Plaintiff (Fabiola Maricela De León) was on the SAM no-contact list. [*Id.* at ¶¶ 13-14] According to Plaintiff, Ms. De León is the mother of his two sons and "the only one suited to facilitate [Plaintiff's] communications with [his] sons." [*Id.* at ¶ 15]

Plaintiff, proceeding pro se, initiated the instant action on July 17, 2023. [#1] The operative Complaint alleges that Defendants are violating Plaintiff's First Amendment right to familial association. [#13 at ¶¶ 31-33, 35] Through the operative Complaint, Plaintiff seeks permission to talk with Ms. Villeda, his children, and six additional contacts. [#13. at ¶¶ 14, 16, 19-20] On January 29, 2024, Defendants filed the instant Motion, seeking dismissal of all of Plaintiff's claims. [#27] Plaintiff has responded to the Motion [##35, 36] and Defendants have filed a reply [#38].

## II.     STANDARD OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under

3

Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id*. (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

B. **Pro Se Litigants**

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id*. at 1110 n.3. The

Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Moreover, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

### III.   ANALYSIS

The Motion argues that Plaintiff has failed to plausibly allege a constitutional claim because the has failed to "allege facts showing that there is no legitimate, rational basis for the restrictions." [#27 at 8] According to Defendants, the SAM restrictions are "reasonably related to the legitimate penological interests of preventing further criminal activity and the inherent risk of death or serious bodily injury related to Plaintiff's drug-trafficking operations or other threats of violence." [*Id.* at 10] The Court agrees that Plaintiff has failed to plausibly allege a First Amendment violation.

The Constitution protects "certain kinds of highly personal relationships." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (quotation omitted). "And outside the prison context, there is some discussion . . . of a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents." *Id.* However, "[t]he very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Id.*; *see Wirsching v. Colorado*, 360 F.3d 1191, 1201 (10th Cir. 2004) (holding ban on visitations with a prisoner's minor child did not violate the constitutional right of familial association).

5

In all cases in which a prisoner asserts that a prison regulation violates the Constitution, the principle that inmates retain at least some constitutional rights must be weighed against the recognition that prison authorities are best equipped to make difficult decisions regarding prison administration. *Washington v. Harper,* 494 U.S. 210, 223-24 (1990). Accordingly, only a rational connection must exist between a prison policy and a legitimate penological interest to justify it. *Turner v. Safley*, 482 U.S. 78, 89 (1987). And in *Turner* the Court held that four factors are relevant to the inquiry:

> (1) whether the regulation has a "valid, rational connection" to a legitimate governmental interest;
> (2) whether alternative means are open to inmates to exercise the asserted right;
> (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and
> (4) whether there are "ready alternatives" to the regulation.

*Overton*, 539 U.S. at 132 (quoting *Turner*, 482 U.S. at 89–91) (numbers and spaces added). In weighing these factors, courts must "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.*

"[I]n ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is reasonably related to a legitimate penological interest*.*" *Al-Owhali v. Holder,* 687 F.3d 1236, 1240 (10th Cir. 2012) (quotation omitted). "Taken together, *Iqbal* and *Turner* require an inmate to plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Id.* (quotation omitted). "This is not to say that [Plaintiff] must identify every potential legitimate interest and plead against it." *Id*. "However, he is

6

required to recite[ ] facts that might well be unnecessary in other contexts to surmount a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  *Id.* (quotation omitted).

Plaintiff's Complaint does not make any attempt to identify any legitimate interest in the SAMs, let alone attempt to plead facts to demonstrate why those SAMs are not reasonably related to a legitimate penological interest.  [#13]  In his response, Plaintiff argues that "[d]uring [his] incarceration, [he has] never possessed a cellular phone and [has] never issued any directives to anyone inside or outside of prison."  [#35 at 5]  Indeed, Plaintiff argues in his response that he has never been issued a single incident report since his conviction.  [*Id.*]  But the "passage of time and [Plaintiff's] . . . clean record in prison do not diminish the weight of the nature of his crime in establishing the SAMs."  *Salim v. Holder*, No. 13-CV-03175-RM-CBS, 2015 WL 13849468, at *5 (D. Colo. Mar. 4, 2015) (quotations omitted), *report and recommendation adopted sub nom.*, *Salim v. Sessions*, No. 13-CV-03175-RM-CBS, 2017 WL 11487131 (D. Colo. May 2, 2017).  And the "penological interest need not be related only to post-incarceration conduct. Prison officials are permitted to consider the nature of the underlying crime for which a prisoner was convicted."  *Sattar v. Holder*, No. 07-CV-02698-PAB-KLM, 2012 WL 882401, at *8 (D. Colo. Mar. 15, 2012).  [#27-1 at 1]  And prison officials are free to consider that "while in the custody of the United States government [prior to his conviction, Plaintiff] continued to communicate with co-conspirators and expressed his intent to kill an Assistant United States Attorney . . . and a cooperating witness."  [#27-1 at 1]

Plaintiff's responses make additional challenges to the SAMs—largely challenging the factual basis for some of the restrictions and the credibility of some of the witnesses who testified against Plaintiff in his trial [#35 at 6-9, 15-16]—but none of these challenges

7

appears in the operative Complaint. Similarly, Plaintiff argues in his response that naming different facilitators to communicate with his minor children would be impractical [#35 at 17-24], but his assertions in this respect are largely conclusory and, in any event, do not appear in the operative Complaint. As a result, Plaintiff has failed to "plead facts from which a plausible inference can be drawn that the [SAMs were] not reasonably related to a legitimate penological interest." *Al-Owhali,* 687 F.3d at 1240. Accordingly, the Court GRANTS Defendants' Motion to Dismiss. But, because Plaintiff proceeds pro se and the Court is not yet convinced that Plaintiff could not plausibly state a claim, the Complaint is DISMISSED WITHOUT PREJUDICE. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that when the plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend" (quotation omitted)); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

IV.   **CONCLUSION**

For the reasons articulated above, Defendants' Motion to Dismiss [#27] is **GRANTED** and Plaintiff's Amended Complaint [#13] is **DISMISSED WITHOUT PREJUDICE**. Should Plaintiff seek to proceed with his claim, he shall file an Amended Complaint by August 8, 2024. If Plaintiff fails to file an Amended Complaint by that date, judgment will be entered in favor of Defendants.

DATED: July 18, 2024                                        BY THE COURT:

                                                                                    s/Scott T. Varholak
                                                                                    United States Magistrate Judge

8